Filed 7/3/24  Salcedo v. County of Riverside CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| RAELYN SALCEDO, | |
| Plaintiff and Appellant, | G062403 |
| v. | (Super. Ct. No. RIC1901850) |
| COUNTY OF RIVERSIDE, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Riverside County, Godofredo Magno, Judge.  Affirmed.

Law Offices of Marc Coleman, Marc Coleman; Hadsell Stormer Renick & Dai, Dan L. Stormer and Tanya Sukhija-Cohen for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Tony Michael Sain, Lann G. McIntyre, and Daniel R. Velladao for Defendant and Respondent.

\*          \*          \*

Plaintiff Raelyn Salcedo appeals from a defense judgment following a jury trial in her claim for disability discrimination at work. Essentially, Salcedo worked in the County of Riverside (Riverside County) information technology (IT) department for several years when she began suffering injuries that had accrued over the years from the physical rigors of installing computer equipment. Riverside County eventually concluded that Salcedo could no longer perform the essential functions of the job because of her deteriorating condition, which prompted Salcedo to retire. She claims this was a constructive discharge based on her disability. The principal factual dispute at trial was over the actual essential functions of her job. Salcedo portrayed her job as requiring very little lifting with plenty of workarounds for heavier equipment. Riverside County portrayed the position as regularly requiring the lifting of 50-plus pounds. The jury sided with Riverside County and concluded that Salcedo could not perform the essential functions of her job even with reasonable accommodations.

Like so many substantial evidence appeals, Salcedo's factual argument falls flat on appeal because, given the conflicting evidence presented, it was ultimately the jury's province to decide which evidence to believe. Salcedo seeks to avoid the substantial evidence standard by her contention that a medical record, in which her doctor's office documented Salcedo's admission that she regularly had to lift over 50 pounds at work, was erroneously admitted into evidence over her hearsay objection. We disagree. The record satisfied the business records exception, and it was highly probative on the main factual issue in the case, the scope of Salcedo's essential job duties. Substantial evidence supports the judgment. We affirm the judgment.

2

FACTS

Beginning in 2002, Salcedo worked for Riverside County as a information technology user support technician ("user tech" or "tech"). This generally involved working on and installing computer and network equipment for the employees of Riverside County. In 2007 she was promoted to user support tech level III, and in 2016 she was promoted to user support tech III-lead, which was her position for the relevant events in this lawsuit.

In mid-April 2017, an incident occurred on the job in which Salcedo rode in a work vehicle where a fire extinguisher had exploded. As a result of exposure to chemicals in the fire extinguisher, she developed a condition called chemical pneumonia. To address her condition, Salcedo consulted with a workers' compensation attorney, who referred her to Dr. Dimitri Sirakoff. Dr. Sirakoff did a full physical evaluation of Salcedo.

Over the years of her employment with Riverside County, Dr. Sirakoff determined Salcedo developed injuries that became worse over time in her neck, hips, and knees. Dr. Sirakoff interviewed Salcedo and noted that her job involved "sitting, walking, standing, bending from the neck and waist, squatting, climbing, kneeling, crawling, twisting from the neck and waist, . . . and constantly lifting and carrying 0 to 75 pounds at, above, or below the waist level . . . ." Dr. Sirakoff's medical assistant filled out a form called "Initial History of Injury" (injury form), which was admitted as exhibit No. 212 and is the subject of one of Salcedo's arguments on appeal. In that form, the assistant checked a circle indicating that Salcedo "constantly" had to lift 51 to 75 pounds at, above, or below waist level. The assistant testified that the injury form was regularly used in the course of business, and she generally filled out such a form at or near the time she was talking to the patient.

3

Dr. Sirakoff issued restrictions on Salcedo's return to work, which included no lifting over 20 pounds; no prolonged sitting, standing, or walking; no repetitive neck bending or neck motions; no climbing or kneeling; and no exposure to chemicals or their fumes and vapors.

The next day, Salcedo went to work but was told by human resources representatives that her disability could not be accommodated on the job and that she was to be sent home on medical leave. She was subsequently contacted by Marni Fitzpatrick, a human resources analyst with Riverside County, who instructed Salcedo to stay home until her next doctor appointment. This was unpaid leave. Salcedo protested that she rarely had to lift anything over 20 pounds, and she could change positions to avoid any issues. Fitzpatrick replied that she would bring the matter up with Salcedo's department.

To that end, Fitzpatrick commissioned an analysis of Salcedo's job. The job analysis was performed by Darlene Crooms, who was a supervisor in the IT department, but not Salcedo's supervisor. Salcedo's supervisor was out on vacation at the time. Fitzpatrick e-mailed Crooms the relevant form, stating, "The Job Analysis would need to be completed specifically for Ms. Salcedo's position, not her classification. For example, what are the main tasks that Ms. Salcedo performs and why does her specific position exist?" However, Crooms testified at trial that she never saw that instruction. Instead, she based her responses on her knowledge and experience of "what the techs do on a regular basis." She did not complete the form based specifically on what a user tech III does, but rather on what techs II and techs III do (which, in her view, was mostly the same). Crooms testified she did not have a specific understanding of what Salcedo did. But

4

she testified that all techs spend 90 percent of their time installing hardware and software, including tech IIIs.

Crooms reported on the worksheet that the job "[o]ccasionally [involves] lifting, carrying, pushing or pulling 50-100 pounds AND/OR frequently lifting, carrying, pushing or pulling 20-50 pounds AND/OR continuous lifting, carrying, pushing or pulling 10-20 pounds." Crooms reported that the job occasionally required crawling and climbing and frequently involved lifting objects over 25 pounds.

After receiving the job analysis, Fitzpatrick held a meeting with Bob Fayad, the head of the Riverside County IT department. Fayad stated that Salcedo was "required to lift over 20 pounds on a regular basis and required to kneel on a regular basis. [Salcedo] receives service tickets in the morning and then typically drives to a warehouse to pick up equipment which can include a computer tower, monitor, printer, laptop etc. [Salcedo] will go to customer location and set up equipment which would mean that she may have to kneel and crawl under desks to connect wires for different equipment." "[S]he also has to lift a metal cart that she places equipment on . . . ." The cart weighed 33 pounds.

Afterward, Fitzpatrick discussed these reports with Salcedo. Salcedo stated she "had not performed those specific duties 'in months,'" but acknowledged that they were essential functions of her position. Due to Salcedo's restrictions, Riverside County required that Salcedo stay on Family Medical Leave Act (FMLA) leave until her next appointment with Dr. Sirakoff.

5

After their next appointment, Dr. Sirakoff modified Salcedo's work restrictions to lifting no more than 30 pounds, and no prolonged sitting, standing, or walking in excess of 30 minutes. After reviewing the modified restrictions, Fitzpatrick concluded that Salcedo still could not perform the essential functions of her job due to the lifting restriction. Riverside County then placed Salcedo on continued FMLA leave from July 31, 2017 through August 28, 2017. Riverside County subsequently approved a medical leave of absence through October 23, 2017.

In September 2017, Salcedo asked to be considered for other positions within Riverside County, including on the IT help desk, which Salcedo believed required the same skill set but without the lifting requirement. Fitzpatrick replied that they had to first determine whether Salcedo would be able to keep her current position, and only if that was denied would they begin the search for alternate positions.

On October 23, 2017, Salcedo once again met with Dr. Sirakoff. At that appointment, Dr. Sirakoff noted Salcedo suffered from: (1) headaches; (2) sprain of cervical spine ligaments; (3) sprain of right hip; (4) sprain of left hip; (5) sprain of right knee; and (6) sprain of left knee. Dr. Sirakoff decided to designate Salcedo as temporarily *totally* disabled from October 23, 2017 until December 7, 2017.

After receiving the updated work restrictions, Fitzpatrick called and discussed the matter with Salcedo. When Fitzpatrick asked Salcedo whether she believed she would eventually be able to return to full duty, Salcedo stated that her condition was not improving. Fitzpatrick discussed the matter with Fayad, who recommended that any further medical leave of absence be denied.

6

On November 13, 2017, Riverside County sent a letter to Salcedo informing her that any further medical leave of absence was denied. In addition, Riverside County decided against looking for any alternate positions for Salcedo on the ground that Salcedo was totally disabled and thus could not work in any position. However, Salcedo would "remain on authorized absence" pending the next steps in the interactive process, provided Salcedo continued to give Riverside County timely updates on her condition. Salcedo was given an option to internally appeal the decision to the human resources director, which she did not do.

Two weeks later, Salcedo retired. This was a service retirement, not a disability retirement.

Salcedo filed suit on March 13, 2019. Her complaint listed causes of action for: (1) failure to provide reasonable accommodation in violation of Government Code section 12940, subdivision (m); (2) failure to engage in good faith interactive process in violation of Government Code section 12940, subdivision (n); (3) wrongful discharge on the basis of disability in violation of Government Code section 12940, subdivision (h); (4) wrongful discharge on the basis of age in violation of Government Code section 12940, subdivision (h); (5) failure to prevent discrimination in violation of Government Code section 12940, subdivision (k); (6) discrimination on the basis of gender, age, and/or disability in violation of Government Code section 12940, subdivision (a); and (7) wrongful termination in violation of public policy. Prior to trial, she dismissed the seventh cause of action. We are told she also dismissed the third and fourth causes of action, though that does not appear in our record.

A jury trial began on March 30, 2022, and concluded April 15, 2022. The jury returned a complete defense verdict in favor of Riverside County. The jury concluded Salcedo was unable to perform the essential

functions of her job even with a reasonable accommodation. The jury found, in Salcedo's favor, that Riverside County failed to participate in a timely, good-faith interactive process, but it concluded that this failure did not cause harm to Salcedo. Similarly, it found Riverside County failed to take all reasonable steps to prevent discrimination, but that this failure did not cause harm. The court entered judgment in favor of Riverside County. Salcedo appealed.

DISCUSSION

Salcedo's argument on appeal is that the job analysis commissioned by Fitzpatrick was fundamentally flawed in that it was filled out by Crooms on the erroneous premise that it should reflect what techs do in general, rather than what Salcedo did specifically. Salcedo testified that certain aspects of the job analysis did not accurately reflect the work she did. Specifically, she testified that in her 15 years on the job, she never had to lift anything between 50 to 100 pounds. Nor did she frequently lift, carry, push, or pull 20 to 50 pounds. According to Salcedo, this false premise tainted the remainder of the interactive process because it was Riverside County's primary basis for concluding she could not fulfill the essential functions of her job.

The flaw in Salcedo's argument is that she treats this issue as though it is one we could decide as a matter of law. But determining the essential functions of her job was plainly a factual issue that we review for substantial evidence. "[W]hen asked to determine whether a factual determination is supported by substantial evidence, the reviewing court should draw all reasonable inferences in *favor* of the judgment below." (*In re Marriage of Bonds* (2000) 24 Cal.4th 1, 35.)

8

While it does seem to be undisputed that the process for determining Salcedo's essential job functions was flawed in that Crooms never saw the instruction from Fitzpatrick to base her analysis on Salcedo's particular job, it does not follow that the ultimate result of that process was incorrect. Although Crooms did not have knowledge of Salcedo's specific day-to-day work, she was knowledgeable about the work that techs did in general. And it is certainly possible that Crooms's description accurately depicted Salcedo's job. While Salcedo testified that the description was inaccurate, the jury was not required to credit that testimony, particularly since there was evidence contradicting Salcedo's testimony.

This brings us to exhibit No. 212, which was the injury form filled out by Dr. Sirakoff's medical assistant. That form stated Salcedo "constantly" had to lift 51 to 75 pounds at, above, or below waist level. If admissible and credited, that evidence corroborated Crooms's description in the job analysis.

Evidence Code section 1271 states that "evidence of a writing made as a record of an act, condition, or event is not made inadmissible by the hearsay rule when offered to prove the act, condition or event if: (a) the writing was made in the regular course of a business; (b) the writing was made at or near the time of the act, condition, or event; (c) the custodian or other qualified witness testifies to its identity and the mode of its preparation; and (d) the sources of information and method and time of preparation were such as to indicate its trustworthiness." The business record exception also provides trial courts with "wide discretion in determining whether a proper foundation has been laid" to admit a certain exhibit. (*Levy-Zentner Co. v. Southern Pac. Transportation Co.* (1977) 74 Cal.App.3d 762, 784.)

The trial court did not abuse its discretion in qualifying the injury form as a business record. The medical assistant testified that the injury form was a form that was regularly used in the course of business at Dr. Sirakoff's office. She further testified that the form was filled out at or near the time she was talking to the patient. She testified that the information listed on the form came from the patient. While the information could also have originated from paperwork from the attorneys, that information was generally confirmed with the patient. The medical assistant did not specifically recall interviewing Salcedo, but she recognized the handwriting on the form as hers. Salcedo does not dispute that this testimony satisfied the first three elements of Evidence Code section 1271.

Salcedo contends the injury form fails the last condition—it was not trustworthy. However, she has not made much of an argument as to why it was not trustworthy, other than to say some of the information may have come from Salcedo's attorney. But we fail to see how that makes it untrustworthy. Presumably, an officer of the court is not spreading misinformation about a client's job duties. In any event, the medical assistant testified that she generally confirms all the information with the patient, which cures any potential untrustworthiness regarding the attorney.[1]

Salcedo also contends the injury form should have been excluded under Evidence Code section 352, which provides, "The court in its discretion may exclude evidence if its probative value is substantially outweighed by the

---

[1] Salcedo also mentioned in passing that some of the information may have come from the attorney's secretary. However, Salcedo provided no citation for that claim, and we have found nothing in the record to substantiate that claim.

10

probability that its admission will . . . create substantial danger of undue prejudice . . . ." Salcedo argues exhibit No. 212 had no probative value because "[Riverside] County did not consider and could not possibly have relied on any such documents . . . ." But whether Riverside County relied on it or not, the injury form is highly probative regarding one of the central issues in the trial: the actual essential functions of Salcedo's job. It tends to show that Crooms's job analysis was a fundamentally accurate description of Salcedo's job. The fact that the injury form was created by Dr. Sirakoff's office independently of Crooms's job description could have made it highly probative to the jury. Moreover, Salcedo makes no real argument about prejudice. She claims the document contains patently false statements, such as that Salcedo's job involved driving forklifts and exposure to extreme temperatures. Regardless of whether that information was true or false, however, it was not prejudicial. In this context, prejudicial means inflammatory. (*People v. Hoze* (1987) 195 Cal.App.3d 949, 954.) Nothing about forklifts or extreme temperatures had any tendency to inflame the passions of the jury. In short, the injury form was highly probative and not unduly prejudicial—precisely the opposite of what Evidence Code section 352 is meant to exclude.

Salcedo's final argument is that the document contains multiple levels of hearsay: the document itself, and the statements the document reflects. However, the statements in this case came from Salcedo. As such, they were admissible as statements of a party opponent. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which [s]he is a party"].)

Having established that the injury form was admissible, it becomes fairly obvious that the jury's verdict was supported by substantial

11

evidence. Regarding the jury's finding that Salcedo could not perform the essential functions of her job with or without a reasonable accommodation, Crooms's job analysis indicated that one essential function was Salcedo would need to be able to lift 50 to 100 pounds, and the injury form corroborates that description. According to Salcedo's doctor notes, she could not lift more than 20 pounds, and later 30 pounds. Salcedo contends that even with that restriction, she could have used rolling carts. But she has not explained how she would get such heavy items onto a cart in the first place. And in any event, whether any particular accommodation was reasonable was an issue for the jury, not the Court of Appeal. Finally, by the end of the interactive process, Salcedo was *totally* disabled and acknowledged to Fitzpatrick that her condition was not improving. Given Salcedo's deteriorating condition and her poor prognosis, the jury was justified in concluding that Salcedo could not fulfill any lifting requirement whatsoever.

Salcedo argues that the designation of totally disabled was simply a function of Dr. Sirakoff's conditional work restrictions, which stated, "If the patient's employer cannot accommodate their return to work with the above work restrictions, or if the above work restrictions are not specifically followed, this patient will be considered temporarily disabled until the next appointment date." The designation of disabled, the reasoning goes, was simply Dr. Sirakoff making good on his intention that Salcedo continue to receive benefits if and when Riverside County failed to accommodate Salcedo. However, it is not clear exactly what Salcedo would have us believe: that Dr. Sirakoff's designation of totally disabled was a fabrication? And we are supposed to reach that conclusion as a matter of law? This is yet another argument better suited for a jury than a Court of Appeal. Plainly, the jury was entitled to interpret Dr. Sirakoff's note at face value, particularly since

that designation was accompanied by various new diagnoses of sprained joints.

Salcedo also claims Riverside County committed discrimination by failing to reassign her to a different position. The factual background of this claim is that Salcedo did suggest two alternate positions she could fulfill: the help desk and the mobile device unit. Fitzpatrick responded that they had to first determine whether Salcedo would be cleared to return to her current position, and if that were denied, they would look to alternate assignments as part of the subsequent steps. The denial occurred on November 13, 2017. At that point, Riverside County declined to investigate alternate positions because Salcedo had been determined by Dr. Sirakoff to be *totally* disabled. Salcedo has not presented any argument or authority that Riverside County was required to look for alternate assignments earlier in the process. Nor is it clear why they would be compelled to find an alternate position when Salcedo could not perform any work at all and had a poor prognosis. More fundamentally, consistent with a general trend in her briefs, Salcedo has not presented any *appellate* argument on this issue— these are still predominantly factual issues that the jury presumably considered and rejected.

The jury's finding that Riverside County failed to engage in the interactive process and failed to prevent discrimination, but without causing harm to Salcedo, is likewise supported by substantial evidence. We interpret that verdict to mean that Riverside County's flawed process of determining the essential job functions did not fulfill its duty, but that, even so, there was no harm because Salcedo could not actually have performed the essential job functions regardless. For all the foregoing reasons, that finding is supported by substantial evidence.

13

## DISPOSITION

The judgment is affirmed. Riverside County is entitled to costs incurred on appeal.


SANCHEZ, J.

WE CONCUR:


O'LEARY, P. J.


GOODING, J.